# CONTRACT OF SALE

THIS CONTRACT OF SALE dated December 5, 2025, is entered into by and between M & H Enterprises, L.L.C. ("Seller") and Harborstone Holdings LLC ("Buyer"). This Agreement contains the entire agreement and understanding of the parties hereto with respect to the matters covered herein and supersedes all prior agreements with respect to the subject matter hereof.

## RECITALS

WHEREAS, the Seller is the owner of real property commonly known as 8229 Washington Boulevard, Jessup, MD 20794 ("the Premises"), and more fully described below;

WHEREAS, the Seller desires to sell and Buyer desires to buy the Premises;

WHEREAS, the Seller is a Maryland limited liability company created and owned by Manijeh Vedadi;

WHEREAS, Manijeh Vedadi departed this life on August 25, 2024;

WHEREAS, on September 10, 2024, the Register of Wills for Montgomery County, Maryland issued Letters of Administration to Khosro Vedadi in the Estate of Manijeh Vedadi, Estate No. W120109 (the "Estate"), thereby appointing Khosro Vedadi as Personal Representative of the Estate;

WHEREAS, pursuant to a resolution dated on or about December 10, 2024, Khosro Vedadi was appointed the Manager of M & H Enterprises, L.L.C.;

## WITNESSETH:

1. *Agreement to Sell and Purchase.*

Subject to the terms and conditions of this Contract, the Seller sells to the Buyer and the Buyer purchases from the Seller all that tract of land described on <u>Exhibit A,</u> attached hereto, located in Howard County, Maryland, most commonly known as 8229 Washington Boulevard, Jessup, Maryland, 20794, together with (i) all buildings and improvements thereon, (ii) any and all permanently attached fixtures and equipment therein or thereon and all electrical, mechanical, heating, ventilation, plumbing and other utility fixtures, and (iii) all of the Seller's right, title and interest in and to all adjacent lands, rights, roads, alleys, ways, waters, privileges and easements and appurtenances thereunto belonging or in anywise appertaining. All of the property described above is hereinafter called the "Premises".

2. *Purchase Price.*

The purchase price which the Buyer shall pay to the Seller for the Premises shall be eight hundred seventy-five thousand dollars ($875,000.00) payable in the following manner:

      (a) Seventy-five thousand Dollars ($75,000.00) has been paid to the Seller as an earnest money deposit, the receipt of which is hereby acknowledged by the Seller. At the time of settlement hereunder the earnest money deposit shall be applied to the purchase price for the Premises.

      (b) Seller agrees to provide Buyer with a credit in the amount of Twenty-Five Thousand Dollars ($25,000) at settlement. This credit may be applied toward Buyer's closing costs, prepaid items, escrows, loan charges, or any other allowable expenses permitted by the Buyer's lender. The Seller credit shall appear on the final settlement statement and be applied at closing accordingly.

      (c) Payment of the remaining balance of seven hundred seventy-five thousand dollars ($775,000.00) will be secured by the Buyer through third party financing from a financial institution of Buyer's choice.

3. *Time and Place of Settlement.*
Settlement shall be held at 10:00 a.m. on December _____, 2026, or at such earlier date and time at which the parties may agree.

Settlement will be held at such location as the parties agree.

4. *Apportionments and Adjustments.*
The following items are to be apportioned to and adjusted between the Seller and the Buyer as of the close of business on the settlement date and are to be assumed and paid thereafter by the Buyer:

      (i) all utilities;

      (ii) all real estate taxes, general or special, and all other public or governmental charges or assessments against the Premises, whether or not payable on an annual basis, (including any benefit charges, assessments, fines, liens or encumbrances for sewer, water, drainage or other public improvements completed or commenced on or prior to the date hereof or subsequent thereto), whether assessments have been levied or not as of the date of settlement.

      (iii) all rent collected for the month in which settlement takes place shall be prorated between Buyer and Seller.

      (iv) Seller shall transfer tenant security deposits in the amount of eight thousand dollars ($8,000.00) required by MD Code, Real Property § 8-203 to Buyer. Any shortfall shall be paid by Seller.

4. *Risk of Loss Pending Settlement.*
The risk of loss by destruction or damage to the property by fire or otherwise prior to the closing of the sale is that of Seller. If all or a substantial portion of the improvements on the property are destroyed or damaged prior to the closing and transfer of title this agreement shall

be voidable at Buyer's option and in the event Buyer elects to void this agreement the earnest money deposited shall be promptly refunded.

5. *Settlement.*
   At thetime of settlement, the following documents shall be executed and delivered:

   (a) *Deed.* The Seller shall execute and deliver to the Buyer a Deed for the Premises containing covenants of special warranty and further assurances, which shall convey fee simple title to the Premises to the Buyer. Title to the Premises shall be good and merchantable, both of record and in fact and such will be insurable by a recognized title insurance company at standard rates, free of all liens, encumbrances, easements, agreements and restrictions, except (i) utility easements and similar encumbrances, provided they are of an inconsequential nature and do not affect the fair market of the Premises or its intended use by the Buyer as residential rental properties.

   (b) *Manufacturer's Warranties.* The Seller shall execute and deliver to the Buyer assignments of all manufacturer's warranties relating to the Premises, if any.

   (c) *Lease documents.* Seller shall provide all documents concerning the residential leases at the Premises, including but not limited to leases, accounting records, security deposit receipts, court records, rental licenses, lead paint certificates and bank account documents. Seller shall take all actions necessary to transfer all bank accounts of tenant security deposits to Buyer.

   (d) *Closing Costs.* Buyer and Seller shall each pay fifty percent (50%) of all closing costs associated with the sale, transfer and conveyance of the Premises to Buyer hereunder, including all transfer taxes, escrow fees, costs of title insurance and endorsements, surveys undertaken by Buyer, and any other incidental fees or charges.

   (e) *Good Standing Certificate.* The Seller shall deliver to the Buyer a certificate of good standing of Seller issued by the Maryland State Department of Assessments and Taxation (the "SDAT").

   (f) *Company Certificate.* The Seller shall deliver to the Buyer a certificate of authority and resolution executed by a duly authorized officer of the Company and dated as of Closing, certifying: (i) that the Seller is authorized to enter into the transaction contemplated by this Agreement, and (ii) that the representations and warranties made by the Seller herein are true and correct in all material respects.

6. *Possession and Condition of the Premises.*
Possession of the Premises shall be given to the Buyer at settlement, unless the parties agree to an earlier time. At settlement the Premises shall be broom clean, free of trash and debris. All office and hard surface areas shall be clear of trash and debris. Prior to settlement the Seller shall remove or cause to be removed, at its sole cost and expense, any and all items of personal property not to be conveyed to the Buyer. It is expressly understood and agreed that

Buyer is familiar with the Premises, has had full opportunity to inspect the Premises and all parts thereof being conveyed, and that Buyer agrees to accept the Premises in **"AS IS"** condition and that Seller makes no representations or warranties with respect thereto.

7. *Seller'sWarranties.*

The Seller hereby makes the following warranties to Buyer, that to Seller's knowledge:

(a) As of the date hereof the Premises are zoned to permit the use of the Premises for residential rental units;

(b) As of the date hereof the Seller has received no notice from any governmental authority of any building code violations or any other violations of law or governmental regulation affecting the premises which have not been corrected, other than the Notice of Violation dated July 22, 2024 from the Howard County Department of Inspections, Licenses and Permits.

(c) The Seller knows of no condemnation or eminent domain proceeding pending or contemplated against the Premises or any part thereof.

(d) The Seller is not now a party to any litigation affecting the Premises or the Seller's right to sell the Premises, or any part thereof, other than <u>Hunter C. Piel, et al. v. M & H Enterprises, L.L.C.</u>, Circuit Court for Baltimore County, Case No. C-13-CV-25-000777. The Seller knows of no threatened or contemplated litigation affecting the Premises or part thereof.

(e) The Seller has all licenses required by Federal, State and local law to operate residential rental units on the Premises, including but not limited to current lead paint certifications and residential rental licenses.

8. *Default.*

Buyer and Seller are required and agree to make full settlement in accordance with the terms of this Contract and acknowledge that failure to do so constitutes a breach hereof. If Buyer fails to make full settlement or is in default due to Buyer's failure to comply with the terms, covenants and conditions of this Contract the initial Deposit and additional Deposits (the "Deposit") may be retained by Seller and/or Seller may pursue all remedies at law and in equity. If Seller fails to make full settlement or is in default due to Seller's failure to comply with the terms, covenants and conditions of this Contract Buyer shall be entitled to pursue such rights and remedies as may be available at law or in equity, including without limitation an action for specific performance of this Contract and/or monetary damages

9. *Access Pending Settlement and Contingencies.*

Buyer and his agents, including all contractors, inspectors, auditors, engineers, experts, employees, advisors and consultants have been, and will continue to be, allowed to enter the Premises, at their own risk and at reasonable times, for examination and study, including any and all environmental studies he wishes to conduct. Buyer shall have until three days prior to settlement to withdraw from this contract.

10. *Time is of the essence.*

    Time is of the essence under this Contract and failure of either party to perform any act as provided in this Contract by a prescribed date or within a prescribed time period shall be a default under this Contract and the non-defaulting party, upon written notice to the defaulting party may declare this Contract null and void.

11. *Financing.*

    Buyer shall timely and diligently pursue the financing described in paragraph 2(c) above. Buyer agrees to use his best efforts to secure financing on or before December 9, 2026. Should Buyer fail to secure financing on or before that date, Buyer may declare this contract void and shall be entitled to a full refund of the deposit of Hundred thousand dollars ($100,000.00)

12. *Liens.*

    Seller shall make all mortgage/deed of trust payments when due until settlement. Seller will provide bank statements to Buyer verifying the payments.

13. *Notifications.*

    Seller shall provide prompt written notification to Buyer if the Estate of Manijeh Vedadi is closed or the Register of Wills of Montgomery County appoints of a new personal representative.

12. *Entire Agreement.*

    This Contract and any addenda thereto contain the final and entire agreement between the parties, and neither they nor their agents shall be bound by any terms, conditions, statements, warranties or representations, oral or written, not herein contained. The parties to this Contract mutually agree that it is binding upon them, their heirs, executors, administrators, personal representatives, successors and, if permitted as herein provided, assigns. Once signed, the terms of this Contract can only be changed by a document executed by all parties.

13. *Drafting.*

    This Agreement shall not be construed more strictly against one party than the other merely by virtue of the fact that it has been prepared initially by counsel for one of the parties, it being recognized that both parties and their respective counsel have had a full and fair opportunity to negotiate and review the terms and provisions of this Agreement and to contribute to its substance and form

14. *Choice of Law.*

    This Contract shall be interpreted and construed in accordance with the laws of the State of Maryland. It is further agreed that this Contract may be executed in counterparts, each of which when considered together shall constitute the original contract.

14. *Counterparts.*

    This Agreement may be executed in counterparts, which shall then be read together and shall constitute for all purposes a single, binding agreement.

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Contract of Sale and affixed their seals as of the date and year first above written.

SELLER:

_____ 12/5/25 (SEAL)        Williams James Vedadi
M & H Enterprises L.L.C.                     Witness

By: Khosro Vedadi
Manager of Seller and P. R. of the Est. of Manijeh Vedadi


BUYER:

Farzin Mehrabkhani 12/05/2025
_____ (SEAL)                _____
Harborstone Holdings LLC                    Witness

By: Farzin Mehrabkhani
Owner and CEO

## EXHIBIT A

## DESCRIPTION OF THE LAND

All of those lots or parcels of ground located in Howard County, Maryland, more particularly described as follows:

BEGINNING for the same at a point on the Southeast side of said Boulevard, a public right-of-way sixty feet wide, said point of beginning being at the Northeast corner of the first parcel of land conveyed by said Myrtle Oliver, widow, to said Manijeh Vedadi as described in the aforementioned Deed, being the same parcel of ground which by Deed dated October 1, 1936, and recorded among the Land Records of Howard County in Liber B.M., Jr. 155, Folio 252 was granted and conveyed by Mary S. Osbon to Thomas F. Oliver and Myrtle Oliver, his wife, thence running with and binding on the Southeast side of said Boulevard along the first or South 37 degrees - 47 minutes West 100.00 foot line of said first parcel in said Deed (1) South 37 degrees 23 minutes 39 seconds West 100.00 feet, as now surveyed, to a point, said point being at the Northeast corner of the second parcel of land conveyed by said Myrtle Oliver, widow, to said Manijeh Vedadi as described in the aforementioned Deed, being the same parcel of ground which by Deed dated June 2, 1955, and recorded among the Land Records of Howard County in Liber RHM 268, Folio 348, was conveyed by John L. Clark, unmarried to Thomas F. Oliver and Myrtle Oliver, his wife, thence running with and binding on the Southeast side of said Boulevard along the first or South 37 degrees 47 minutes West 100.00 foot line of said second parcel in said Deed (2) South 37 degrees 23 minutes 39 seconds West 100.00 feet as now surveyed, to a point, thence leaving said Boulevard and running with and binding on the second or South 63 degrees 3 minutes East, 150.00 foot line of said second Parcel (3) South 63 degrees 26 minutes 21 seconds West 150.00 feet as now surveyed, to a point on line, said point being the Southeast corner of said second parcel, thence leaving said Southeast corner of said second parcel and running with and binding on the first or South 63 degrees 3 minutes East 1203.51 foot line of the fourth parcel of land described in the aforementioned Deed, being the same parcel of land which by Deed dated June 9, 1947, and recorded among the Land Records of Howard County in Liber M.W.B. 198, Folio 278 was granted and conveyed by Beatrice O. Vickers, etc., to Thomas F. Oliver and Myrtle Oliver, his wife, (4) South 63 degrees 26 minutes 21 seconds East, 353.16 feet as now surveyed to a point, said point being at the end of the seventh or North 63 degrees 26 minutes 21 seconds West 850.34 foot line of the fifth parcel of land described in the aforementioned Deed, being the same parcel of land which by deed dated March 17, 1965, and recorded among the Land Records of Howard County in Liber WHH 432, Folio 479, was granted and conveyed by Thomas F. Oliver and Myrtle Oliver, his wife, to Charles A. Reese, thence running with and binding along the outline of said fifth parcel the three following courses and distances viz:

(5) North 26 degrees 33 minutes 39 seconds East 196.44 feet
(6) North 63 degrees 26 minutes 21 seconds West 315.57 feet
(7) North 63 - 26 minutes 21 seconds West 150.00 feet

to the point of beginning, containing 95,147.797 square feet or 2.1843 acres of land more or less.

The improvements thereon being known as 8229 Washington Boulevard, Jessup, Maryland 20794.